# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chitrakha Kalimootoo and Leslie : 
Kalimootoo, :
                      Appellants :
                 :
           v.                :     No. 125 C.D. 2019
                 :     Argued:  September 9, 2019
Middle Smithfield Township and Zoning :
Hearing Board of Middle Smithfield :
Township :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY SENIOR JUDGE SIMPSON**        **FILED:  November 12, 2019**

## I. Introduction

Chitrakha Kalimootoo (C.K.) and her husband, Leslie Kalimootoo (L.K.) (collectively, Owners), appeal from an order of the Court of Common Pleas of Monroe County (trial court)[1] that affirmed a decision of the Middle Smithfield Township (Township) Zoning Hearing Board (ZHB) upholding a 2017 enforcement notice.  The ZHB found that Owners violated the Township's 2010 zoning ordinance (2010 Ordinance) by building accessory structures and raising farm animals on their property.  Owners contend their appeal should be granted for the following reasons: (1) their use of the property constitutes a prior, nonconforming use; (2) they were denied a fair hearing before the ZHB; (3) the 2017 zoning enforcement proceeding was barred by collateral estoppel; (4) the Township violated their substantive and

_____
[1] The Honorable Arthur L. Zulick presided.

procedural due process rights; and (5) the changes in the 2010 Ordinance were procedurally defective. Upon review, we affirm.

## II. Background
### A. Purchase of Property; Ordinances; Accessory Structures

In October 1998, Owners purchased the property located at 5200 Reservoir Road, which is 5.389 acres in size.[2] At that time, the property was wooded and vacant. The Township's 1977 zoning ordinance (1977 Ordinance) in effect at the time of Owners' purchase required a property owner to obtain a zoning permit prior to the erection or addition of any building, structure or portion thereof. The 1977 Ordinance defined a structure to include accessory sheds and fences.

The Township's 2004 zoning ordinance (2004 Ordinance), which became effective in September 2004, also required a permit for accessory structures, which included sheds and fences. The Township's current zoning ordinance (2010 Ordinance), which became effective in December 2010, also requires that a permit be obtained to erect residential accessory structures.

Sometime after purchasing the property, Owners erected five accessory structures, including a fence. Owners never applied for a zoning permit to erect these structures.

Former Zoning Officer Wayne Rohner (Z.O. Rohner) testified as a witness for Owners. Z.O. Rohner recalled that during his first tenure, from October

---

[2] In 2009, Owners L.K. and C.K. transferred the property to C.K. as sole owner. For purposes of this appeal, however, we refer to L.K. and C.K. jointly as Owners.

1995 through November 2000, there were no accessory structures on the property other than a garage, for which Owners obtained a permit.

Sometime during his second tenure as zoning officer, which ran from March 2007 through May 2013, Z.O. Rohner became aware of five more accessory structures currently on the property (sheds, a canopy and fencing for management of chickens, ducks and goats). He noticed the structures while driving by the property. Z.O. Rohner did not issue any permits for the accessory structures. L.K. claimed Z.O. Rohner told him he did not need a zoning permit for the accessory structures. However, Z.O. Rohner never testified that he told Owners, or that they ever asked, whether they needed a permit for the accessory structures.

## B. 2001 Enforcement Notice (Agricultural Use: Livestock)

Sometime in 2001, Owners began keeping livestock on the property. In May 2001, Deb Ogden (Z.O. Ogden), the zoning officer at the time, issued an enforcement notice asserting a violation of Section 5.202-B of the 1977 Ordinance by conducting animal husbandry on a property of less than 10 acres. The enforcement notice also asserted a violation of Section 5.202-B of the 1977 Ordinance by keeping livestock within 200 feet of a property line or road right-of-way.

L.K., who operates a home insulation business, claimed he entered into an agreement with the abutting property owner to the rear enabling him to lease enough land to meet the 10-acre requirement. In exchange for use of the property, L.K. insulated the neighbor's house. L.K. further claimed Z.O. Ogden told him the arrangement was okay to meet the 10-acre requirement and resolve the matter.

However, L.K. admitted he never appealed the 2001 enforcement notice, and he had nothing in writing from Z.O. Ogden indicating resolution of the violation. Further, although L.K. claimed he once had a written agreement with his neighbor (who passed away), L.K. indicated he no longer had that written document.

### C. 2004 and 2010 Ordinances (Agricultural Use: Livestock)

The 2004 Ordinance permitted the keeping of livestock in Owners' zoning district (Low Density Residential District) by special exception. Owners acknowledged they kept livestock on the property prior to and throughout the time that the 2004 Ordinance remained in effect. However, Owners never applied for a special exception for the use. The 2010 Ordinance prohibits agricultural uses, including the keeping of livestock in Owners' zoning district, now classified as R-2 Residential.

### D. 2017 Enforcement Notice (Agricultural Use; Accessory Structures)

In September 2017, the Township's current zoning officer, Shawn McGlynn (Z.O. McGlynn) issued C.K. (the current sole owner of the property) a formal enforcement notice listing the following violations:

> 1. Established a new use on, and/or change the use of, the subject property, without first obtaining a Zoning Permit from the Zoning Officer in violation of §010-060, §010-090, and §082-010 of the [2010 Ordinance]. You have established an A1 Agricultural, general use on the property and have not obtained a zoning permit for this new and/or change in use on the property.
>
> 2. Established an A1 Agricultural, general use on the subject property in violation of §041-010 and §043-010 of

4

the [2010 Ordinance]. The property is located in the R2 Zoning District where an A1 use is prohibited.

3. Constructed residential accessory structures without first obtaining a Zoning Permit from the Zoning Officer in violation of §010-060, §010-090, and §082-010 of the [2010 Ordinance].

ZHB Op., 7/5/18, Finding of Fact (F.F.) No. 16. L.K., on behalf of C.K., timely appealed the enforcement notice.

## E. ZHB's Decision

Following four hearings, the ZHB issued a comprehensive decision upholding the 2017 enforcement notice. In its decision, the ZHB determined Owners failed to establish a prior nonconforming use for the keeping of livestock that would have predated the 1977, 2004 and 2010 Ordinances. Conclusion of Law (C.L.) No. 1. Further, Owners did not appeal Z.O. Ogden's 2001 enforcement notice regarding the keeping of livestock (chickens, ducks and goats) on property with less than 10 acres. C.L. No. 2. Consequently, the 2001 enforcement notice remained controlling, and clearly indicates that Owners did not prove a nonconforming use under the 1977 Ordinance. C.L. No. 3.

Moreover, Owners did not seek a special exception for livestock under the 2004 Ordinance. C.L. No. 4. Under the 2004 Ordinance, Owners' property was zoned Low Density Residential.

Owners continued to keep livestock as of the 2017 enforcement notice and final ZHB hearing in March 2018. C.L. No. 5. Under the 2010 Ordinance, the

5

keeping of livestock constitutes an A1-Agriculutral General use, which is not permitted in the R-2 Residential District where the property is located. C.L. No. 6.

Owners never applied for a permit for their five accessory structures, including the fence, which were constructed sometime after November 2000. C.L. Nos. 7, 8. Thus, the accessory structures were not prior nonconforming uses under the 1977, 2004 or 2010 Ordinances. C.L. No. 9.

The ZHB also rejected Owners' claim that they were entitled to a deemed approval under Section 908(1.2) of the Pennsylvania Municipalities Planning Code (MPC).[3] C.L. No. 10. In particular, the ZHB determined that Owners waived the time period requirement in that provision. Id.

The ZHB further rejected Owners' contention that they were denied a fair hearing due to bias and partiality on the part of ZHB Solicitor John B. Dunn (Solicitor Dunn). C.L. No. 11. The ZHB reasoned that Solicitor Dunn, in assisting the ZHB to some extent, did not act as an advocate for the Township or a quasi-hearing officer as alleged by Owners. Id.

The ZHB further determined the MPC does not prevent the Township from appointing a consulting firm, with a named designee, as its zoning officer. C.L. No. 12. Even assuming such a challenge to the appointment of Z.O. McGlynn could be made, the ZHB does not have jurisdiction over such a challenge under its designated powers. C.L. No. 13.

_____

[3] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10908(1.2).

The ZHB next determined that the Township's adoption of the 2010 Ordinance did not constitute an amendment, *per se*, of the Township's zoning ordinance or a change of an existing zoning map so as to require notice of a zoning map change. C.L. Nos. 15-16. In particular, the ZHB concluded that Owners offered no proof of a zoning map change in violation of any provision of the MPC. C.L. No. 17.

In addition, citing Cmwlth., Office of Attorney General by Corbett, v. Locust Township, 49 A.3d 502 (Pa. 2012), the ZHB determined that neither the Act known as the Right to Farm Law (RFL)[4] nor the Agricultural Area Security Law (AASL)[5] prohibit the Township from regulating agricultural activity by defining agricultural uses, and providing where those agricultural uses are permitted and under what conditions. C.L. No. 18. The ZHB determined that the 2010 Ordinance does permit agricultural uses in the Township, but prohibits agricultural uses in the R-2 Residential District. C.L. No. 19. The ZHB further concluded that an enforcement action under the 2010 Ordinance, to restrict the location of an activity where it is prohibited in a specific zoning district, is not the equivalent of what is considered a nuisance action for purposes of the RFL. C.L. Nos. 21-22.

In particular, the ZHB determined that the purpose of the AASL, to conserve, protect and encourage the development and improvement of agricultural lands, is not offended or violated by the 2010 Ordinance. In the Ordinance, the

---

[4] Act of June 10, 1982, P.L. 454, as amended, 3 P.S. §§951-57.

[5] Act of June 30, 1981, P.L. 128, as amended, 3 P.S. §§901-15.

7

Township provides where agricultural activities can occur and where they cannot occur.

The ZHB also concluded it lacked jurisdiction to determine whether the Township's 2017 enforcement action, which regulates the location of agricultural activity, is a violation of Owners' constitutional rights to the enjoyment and peaceful use of their property. C.L. No. 23.

For these reasons, the ZHB upheld the Township's enforcement notice.

### E. Trial Court's Decision

Owners next appealed to the trial court. Without taking any additional evidence, the trial court affirmed the ZHB's decision. Owners appealed to this Court.[6]

### III. Discussion
### A. Prior Nonconforming Use

Owners assert a lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction. DoMiJo, LLC v. McLain, 41 A.3d 967 (Pa. Cmwlth. 2012). Where a legal nonconforming use exists, the right to continue such use is afforded the constitutional protection of due process. Id. As such, the right to continue operations of a lawful nonconforming use runs with the land so long as the use is not abandoned. Id.

---

[6] Where the trial court did not take any additional evidence, our review is limited to determining whether the ZHB abused its discretion or erred as a matter of law. Penn St., L.P. v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014).

Here, Owners contend they established that their agricultural activities were permitted under the 1977 Ordinance, which was in effect in 2001. Owners assert they have maintained regular and continued agricultural activities on their property since that time.

Owners further maintain the accessory structures on their property did not require permits when they were erected. In support, L.K. claims he confirmed this fact with Z.O. Rohner.

The ZHB properly determined Owners did not establish a lawful nonconforming use as to either their agricultural (livestock) use or their accessory structures. Section 042-010 of the 2010 Ordinance, relating to the effect of existing nonconforming status, provides (with emphasis added):

> A property owner has a constitutional right to continue a nonconforming condition and the Zoning Officer(s) shall issue to a property owner a zoning permit for any nonconformity so long as the property owner can prove to the Zoning Officer that the lot, use or structure was lawfully in existence as of the time of the enactment of an ordinance with which the lot, use or structure was in violation. Once a zoning permit has been issued for the nonconformity, the nonconformity can continue until it is abandoned. A preexisting nonconforming condition for which a zoning permit is issued creates a vested property right that shall run with the land, not the owner. A use or structure that is approved by the Township and subsequently becomes part of an Overlay District shall not be considered a nonconforming use. Uses and structures with no vested rights are illegal and require removal.

Section 042-010 of the Middle Smithfield Twp. Zoning Ordinance of 2010-A.

9

The right to maintain a lawful nonconforming use is only available for uses that were lawful when they came into existence and which existed when the ordinance took effect. Hafner v. Zoning Hearing Bd. of Allen Twp., 974 A.2d 1204 (Pa. Cmwlth. 2009).

Here, Owners failed to establish that either the keeping of livestock or the accessory structures were lawful nonconforming conditions. Regarding the general agricultural (livestock) use, the 1977 Ordinance did not allow an agricultural use on properties of less than 10 acres. Owners received a 2001 enforcement notice as to the livestock. Owners did not appeal the 2001 enforcement notice. Further, the ZHB found no agreement between the Township and Owners to waive the enforcement notice.

The 2004 Ordinance would have allowed an agricultural use on Owners' 5.389-acre lot by special exception. However, Owners never applied for or received a special exception for their agricultural use.

Accordingly, at the time of the enactment of the 2010 Ordinance, which does not permit an agricultural use in an R-2 Residential District, Owners did not have a lawful nonconforming agricultural use.

Similarly, Owners never obtained permits to construct their additional accessory structures (sheds, canopy, fencing used to manage the livestock). Z.O. Rohner did not corroborate testimony that he advised L.K. that he did not need permits for the structures. Ultimately, the ZHB rejected as not credible L.K.'s

10

testimony that Z.O. Rohner told him he did not need permits for the accessory structures.

Consequently, we detect no error in the ZHB's determination that Owners failed to meet their burden of establishing a lawful nonconformance for either agricultural use (livestock) or for their additional accessory structures. DoMiJo; Hafner.

## B. Fair Hearing

Owners next contend they were not afforded a fair hearing before the ZHB. They assert a fair hearing is a fundamental requirement of due process, which applies to administrative agencies just as it does to courts. Dayoub, D.D.S. v. State Dental Council & Examining Bd., 453 A.2d 751 (Pa. Cmwlth. 1982). Due process is denied in an administrative proceeding where there is a commingling of the prosecutorial and adjudicative functions. Id. To that end, administrative tribunals must be unbiased and avoid even the appearance of bias to be in accord with the principles of due process. Id.

Here, Owners assert that on numerous occasions, ZHB Solicitor Dunn acted in a prosecutorial fashion on behalf of the Township. Owners cite the following examples in the record. During the hearing, Owners' counsel asked Solicitor Dunn to either pick a side as their advocate or represent the ZHB (Reproduced Record (R.R.) at 249-50). Solicitor Dunn conducted lengthy questioning of a Township witness and ZHB member (R.R. at 342-44). Solicitor Dunn also conducted lengthy questioning of Z.O. Rohner, a key witness for Owners

11

(R.R. at 460-70). In sum, Owners argue that Solicitor Dunn's conduct during the hearing, by assisting the Board in prosecuting its case against Owners, denied them a fair hearing. Owners further claim Solicitor Dunn made several rulings on evidence favorable to the Township and overstepped his limited role of assisting the ZHB in its adjudicatory function.

Owners also contend the ZHB violated Section 908(2) of the MPC, 53 P.S. §10908(2), by failing to appoint a hearing officer. Rather, Owners assert, the ZHB relied upon Solicitor Dunn as a quasi-hearing officer. Because it did not appoint Solicitor Dunn as a hearing officer, Owners maintain the ZHB violated Section 908(2) of the MPC.

Based on our review of the record, we conclude that the ZHB properly determined Solicitor Dunn's efforts, in providing guidance and instruction to the ZHB, did not constitute "prosecutorial" actions on behalf of the Township. See ZHB Op., F.F. No. 42. The ZHB further determined the record reflects that the ZHB, not Solicitor Dunn, made the evidentiary rulings. F.F. No. 43. Significantly, the ZHB determined Solicitor Dunn made at least a dozen recommendations to overrule the Township's objections. F.F. No. 45.

Additionally, as the trial court observed, the record reflects that the ZHB acted independently and that Solicitor Dunn's conduct during the hearing did not unfairly prejudice Owners' case or demonstrate actual bias. See Penn St., L.P. v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014) (judicial remarks during a trial do not constitute bias or impartiality unless they

display a deep-seated favoritism or antagonism that would make fair judgment impossible).

Moreover, nothing in the MPC or case law prohibited Solicitor Dunn from questioning witnesses during the hearing. Therefore, based on our review of the record, we conclude that Owners failed to present any legally competent evidence or argument that the ZHB's hearings were unfair. Penn St.

Also, Section 908(2) of the MPC does not require that a ZHB appoint a hearing officer. In the present case, the ZHB itself was present for all the hearings, and it rendered evidentiary rulings. Moreover, the ZHB's decision is supported by the testimony of the witnesses the ZHB deemed credible, and it is in accord with the applicable law.

Consequently, we discern no bias on the part of the ZHB supporting a partiality challenge or indicating that the ZHB was so antagonistic against Owners as to render a fair judgment in the case impossible. Penn St.

### C. Collateral Estoppel

Owners next contend the 2017 enforcement notice should have been barred under the doctrine of collateral estoppel because L.K. cured any defects when he resolved the 2001 enforcement notice by securing written permission from a neighbor to lease land to meet the 10-acre requirement for agricultural use. Owners assert Z.O. Ogden withdrew the 2001 enforcement notice. Thereafter, the 2004 Ordinance changed the required acreage to 5 acres. Because Owners have 5.39 acres,

13

they argue they no longer need a written agreement from the neighbor to meet the acreage requirement for an agricultural use. As such, Owners maintain they successfully addressed the issues raised in the 2017 enforcement notice. Therefore, the doctrine of collateral estoppel precludes the 2017 enforcement notice.

Owners' collateral estoppel argument fails for several reasons. Collateral estoppel applies if: (1) the issue previously decided is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party, or in privity with a party, in the prior case; (4) there was a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. Fowler v. City of Bethlehem Zoning Hearing Bd., 187 A.3d 287 (Pa. Cmwlth. 2018).

Most importantly, the ZHB rejected as not credible L.K.'s testimony that Z.O. Ogden agreed that L.K. met the 10-acre requirement for an agricultural use and thus withdrew the 2001 enforcement notice. See ZHB Op., F.F. Nos. 22, 23. A reviewing court may not overturn the rational credibility determinations of the ZHB. Vaughn v. Zoning Hearing Bd. of Twp. of Shaler, 947 A.2d 218 (Pa. Cmwlth. 2008).

The ZHB further found that Owners did not appeal or otherwise favorably resolve the 2001 enforcement notice. F.F. No. 24. The ZHB also found that Z.O. Ogden did not withdraw the enforcement notice. Id.

For these reasons, Owners' assertion of collateral estoppel against the 2017 enforcement notice, based on their alleged favorable resolution of the 2001 enforcement notice, fails.

**D. Constitutional Violations**

Owners next contend the Township's 2017 action to enforce the 2010 Ordinance against them, after failing to take further action after the 2001 enforcement action, violated their substantive and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.[7] Procedural due process includes advance notice of significant deprivations of liberty and property, and a meaningful opportunity to be heard. Abbott v. Latshaw, 164 F.3d 141 (3d Cir. 1998). The substantive component of due process bars certain arbitrary and wrongful government actions that would deprive an individual of life, liberty or property. Tazioly v. City of Philadelphia (E.D. Pa., No. CIV.A. 97-CV-1219, filed Sept. 10, 1998), 1998 WL 633747 (not reported in F. Supp. 2d).

As discussed above, Owners timely appealed the 2017 enforcement notice, and they were afforded a full and fair hearing before the ZHB. The ZHB held four evidentiary hearings at which the ZHB received numerous exhibits and testimony from several witnesses. Thereafter, the ZHB issued a comprehensive decision with detailed findings and legal conclusions. Accordingly, we reject Owners' contention that they were deprived of procedural due process in this case.

---

[7] U.S. CONST. amend IV.

15

With respect to substantive due process, Owners argue the Township's selective enforcement of the 2010 Ordinance violates their constitutional right to the peaceful use of their property. Owners also claim the Township selectively enforced the 2010 Ordinance, which violates their freedom of expression by allowing specific animals and excluding others.

Owners further argue the 2017 enforcement action violates their civil rights because the Township is punishing them for refusing to sell portions of their property. Owners assert no other explanation exists for the enforcement action, which was filed in close proximity with Owners' refusal to sell the property.

By way of further explanation, Owners claim the agricultural activities on their property have been ongoing since at least 2001. They assert the Township took no action against them since they resolved the 2001 enforcement notice. Moreover, no Township residents or neighboring property owners ever complained of Owners' agricultural use. Nonetheless, Owners argue the Township is attempting to punish them for refusing to sell a portion of their property.

In Conclusion of Law No. 23, the ZHB determined it lacked jurisdiction to address Owners' contention that the Township's 2017 enforcement action, which regulates their agricultural activities, infringes on their rights to enjoy the peaceful use of their property. See Section 909.1 of the MPC[8] (ZHB's limited jurisdiction does not extend to alleged constitutional violations).

_____

[8] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1.

16

Regardless, we recognize that a constitutional violation based on selective enforcement of a zoning ordinance may only be established by evidence of conscious discrimination. Knipple v. Geistown Borough Zoning Hearing Bd., 624 A.2d 766 (Pa. Cmwlth. 1993). Conscious discrimination is demonstrated by showing the enforcement was arbitrary, irrational or tainted by an improper motive. Id. A claim of selective enforcement must be based on evidence that intentional and purposeful discrimination exists. McLaughlin v. Zoning Hearing Bd. of Smithfield Twp. (Pa. Cmwlth., No. 90 C.D. 2008, filed June 11, 2008) 2008 WL 9404677 (unreported).[9] Therefore, a claim of selective enforcement unsupported by anything more than mere assertions fails.

Here, the record does not indicate the Township acted with an arbitrary, irrational or improper motive in bringing the 2017 enforcement action. Z.O. McGlynn testified before the ZHB that he received a complaint from a ZHB member, and thereafter he happened to be driving by the property and noticed the presence of livestock. See R.R. at 207-08. Z.O. McGlynn observed chickens, ducks, geese, and some goats; he was startled at the number of animals. Id. at 215-16. He estimated the number of fowl to be in the hundreds. Id. at 216. He also observed that a lot of structures and fences had been built on the property without permits. Id.

Z.O. McGlynn also spoke with L.K. prior to issuing the 2017 enforcement notice. Z.O. McGlynn recalled that L.K. asked for a formal enforcement notice. Moreover, Owners presented no evidence that they were treated differently from any other similarly situated property owners.

---

[9] This unreported case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

17

In short, Owners presented no evidence showing the Township brought the 2017 enforcement action based on an arbitrary, irrational or improper motive. Rather, Owners' constitutional claims are simply conclusory statements that are unsupported by the record. Consequently, Owners failed to establish a violation of their due process rights.

In addition, Owners failed to present any evidence that the Township's zoning officer retaliated against them because they did not sell the Township a portion of their property for a public works project. To the contrary, the Township established that Owners have been engaged in unpermitted agricultural activities since 2001 in violation of: the 1977 Ordinance (agricultural use without a permit on less than a 10-acre property); the 2004 Ordinance (agricultural use without a special exception); and the 2010 Ordinance (agricultural use not permitted in an R-2 Residential District). As such, a non-discriminatory explanation exists for the Township's 2017 enforcement action.

In sum, Owners' claims of constitutional violations are merely conclusory allegations unsupported by, and, in fact, contrary to the facts of the record. Therefore, Owners' constitutional claims fail. McLaughlin; Knipple.

**E. Zoning Map Change**

Owners' final contention is that the 2010 amendment to the Township's zoning ordinance was so severe as to constitute a zoning map change. The 2010 Ordinance created a new district, the R-2 Residential, which eliminated agricultural

18

activities permitted in the 2004 Ordinance by special exception in the Low Density Residential District.

Owners argue that when a zoning change is so severe that it constitutes a zoning map change, notice of a zoning map change must be provided in accord with Section 609(b) of the MPC, 53 P.S. §10609(b). Shaw v. Twp. of Upper St. Clair Zoning Hearing Bd., 71 A.3d 1103 (Pa. Cmwlth. 2013). Until such notice is given, objecting property owners have an opportunity to be heard. Owners assert it is well established in Pennsylvania that municipal ordinances are void *ab initio* unless enacted in compliance with statutory procedural requirements. Schadler v. Zoning Hearing Bd. of Weisenberg Twp., 850 A.2d 619 (Pa. 2004). Owners further assert a procedural validity challenge to a zoning ordinance cannot be time barred.

Owners assert that the Township offered no evidence to indicate the changes in the 2010 Ordinance were advertised as a zoning map change as required by the MPC. Therefore, Owners argue the Township cannot legally enforce the 2010 Ordinance.

Section 1002-A of the MPC,[10] relating to jurisdiction and venue on appeal, provides, in relevant part:

> (b) Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption <u>shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the ordinance</u>

---

[10] Added by the Act of December 21, 1988, P.L. 1329.

19

> is located in accordance with 42 Pa. C.S. §5571.1 (relating to appeals from ordinances, resolutions, maps, etc.).

53 P.S. §11002-A(b) (emphasis added). Section 1002-A(b) of the MPC reinforces the point that procedural challenges to land use ordinances are governed by Section 5571.1 of the Judicial Code, 42 Pa. C.S. §5571.1 (relating to appeals from ordinances, resolutions, maps).

We further note that as result of the 2008 amendments to the MPC, Section 909.1(a) no longer provides a ZHB with jurisdiction over a procedural validity challenge to a zoning ordinance. Therefore, the ZHB in the present case properly determined that it lacked subject matter jurisdiction over Owners' procedural validity challenge to the 2010 Ordinance. Section 1002-A of the MPC, 53 P.S. §11002-A. Consequently, the trial court and this Court, acting as reviewing courts, lack subject matter jurisdiction over Owners' procedural validity challenge.

## IV. Conclusion

For the above reasons, we discern no error, abuse of discretion or constitutional violations in the ZHB's decision. Accordingly, we affirm the trial court's order affirming the ZHB.

_____
ROBERT SIMPSON, Senior Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chitrakha Kalimootoo and Leslie : 
Kalimootoo, : 
                  Appellants : 
         : 
           v. :     No. 125 C.D. 2019
         : 
Middle Smithfield Township and Zoning : 
Hearing Board of Middle Smithfield : 
Township : 

# **O R D E R**

**AND NOW**, this 12th day of November 2019, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Monroe County is **AFFIRMED**.

 

 

_____
ROBERT SIMPSON, Senior Judge